IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SARAH GARDNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 04-3112 |
| | ) | |
| STATE OF ILLINOIS, DEPARTMENT | ) | |
| OF CHILDREN AND FAMILY | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

This is a Title VII retaliation case brought under 42 U.S.C. § 2000e-3(a). Pending before the Court are several motions in limine, four of which the Court now considers.

(1)

Defendant State of Illinois Department of Children and Family Services ("DCFS" or "the Defendant") has moved in limine to bar evidence or argument at trial concerning former Deputy Director of Human

1

Resources Robin Staggers' transfer and media reports about alleged improper hiring activity outside DCFS.   Plaintiff Sarah Gardner acknowledges that this evidence is not relevant for the purpose of trial. Accordingly, the Court will grant the Defendant's motion in limine to bar this evidence at trial, unless specific leave of Court is first provided.

(2)

The Defendant has also moved in limine to bar evidence or argument at trial that offering the Plaintiff the Chief of Affirmative Action position as a double exempt position is a cognizable adverse employment action. According to DCFS, this evidence should be excluded entirely from trial because in her charge of discrimination, Plaintiff never claimed that changing the Chief of Affirmative Action position from a "code" to "double exempt" position was an adverse employment action that she sought to challenge.  As a double exempt position, the affirmative action chief position would be exempt from both the Illinois Personnel Code and from the Supreme Court's <u>Rutan</u> decision, meaning that the employee could be hired and/or fired at will.  The Defendant notes that when the Plaintiff was given

the opportunity to sign the paperwork necessary to accept the promotion, Plaintiff refused the position because she was dissatisfied with the compensation and the fact that the position was being changed to a double exempt position.

In her EEOC charge of discrimination, the Plaintiff alleged:

**Nature of the Claim**

1.  The Complainant is an African-American female.

2.  The Complainant has been employed by the Respondent for a period of time in excess of nine years. Throughout her employment she has been employed as an Affirmative Action Officer.

3.  That Complainant sought the position of Chief of the Department of Children and Family Services's Affirmative Action when its then Chief retired.

4.   That when Complainant was initially offered the position it was offered at a salary well below the salary being paid to the individual who had previously occupied that position and well below comparable employees of DCFS.

5.  That when Complainant requested that she be given a salary level comparable to her predecessor and comparable to similarly situated employees of DCFS the offer for the position was taken away from her.

> 6.  These actions have been taken because she previously filed multiple charges of discrimination against the Respondent.  As such, she has been subjected to unlawful retaliation by the Respondent.

Based on the foregoing, the Defendant states that Plaintiff's sole theory of retaliation raised in her charge of discrimination was that DCFS retaliated against her by offering her a salary lower than that paid to the prior Affirmative Action Chief.  In her charge of discrimination, the Plaintiff does not claim to challenge that the position's status was changed from being code to double exempt.  As a general matter, Title VII plaintiffs are precluded from bringing claims and theories of liability that were not included in their EEOC charges.  Kolupa v. Roselle Park Dist., 438 F.3d 713, 715-16 (7th Cir. 2006).

In her response brief, the Plaintiff alleges that her EEOC charge is sufficient to allow her to bring up facts related to the fact that the position of Chief of Affirmative Action was made double exempt.  Gardner states that she is not maintaining that making the position double exempt in and of itself was a materially adverse action.  Rather, she asserts that it was part of a series of events that were retaliatory.  Gardner contends, however, that

4

even if she were seeking to offer the change in status of the position as an independent grounds for recovery, she would be permitted to do so under the liberal guidelines for filing an administrative charge. "[T]his Court has adopted a liberal standard for reviewing the scope of an EEOC charge and has held that all claims of discrimination are cognizable that are like or reasonably related to the allegations of the charge and growing out of such allegations." Farrell v. Butler University, 421 F.3d 609, 616 (7th Cir. 2005) (internal quotations and citations omitted). Courts recognize that these charges are often filed without the benefit of counsel. Ezell v. Potter, 400 F.3d 1041, 1047 (7th Cir. 2005). The complaint and EEOC charge must at least describe the same circumstances and participants. Conner v. Illinois Dept. of Natural Resources, 413 F.3d 675, 680 (7th Cir. 2005). "[T]o determine whether a claim raised in a complaint is within the scope of the earlier-filed EEOC charge, we ask what EEOC investigation could reasonably be expected to grow from the original charge." Ezell, 400 F.3d at 1047.

Because the Plaintiff is not alleging that the change in status of the Affirmative Action Chief position was itself a materially adverse action and

5

is not seeking to pursue it as an independent grounds for recovery, the issue

appears to be moot to some extent.  To the extent that the Defendant seeks

to prevent the Plaintiff from offering any evidence pertaining to the

conversion of the position from a code to double exempt position, the Court

will deny the motion in limine.  Although the issue is relatively close

because the Plaintiff was aware of the change in the position's status to

double exempt at the time the charge was filed, the Court concludes that

based on the liberal standard governing an EEOC charge, Gardner should

not be precluded from presenting this evidence as part of her overall theory

of the case.  The Court agrees with the Plaintiff's assertion that this

evidence would have likely come up during the course of an investigation.

The motion will be denied.

(3)

<u>Background</u>

The Defendant has also filed a motion in limine to bar the Plaintiff

from attempting to introduce hearsay testimony at trial.  The Defendant

states that at trial, it expects the Plaintiff to attempt to elicit hearsay

6

testimony from Plaintiff, Bamani Obadele, Leshonda Rogers and/or Bryan

Samuels, the former Director of DCFS, concerning statements pertaining to

Gardner's promotion to the position of Affirmative Action Chief at DCFS.

The Defendant contends the hearsay testimony that should be barred under

Federal Rule of Evidence 802 includes:

- statements allegedly made by Obadele to Plaintiff that Staggers had been told about Plaintiff's previous lawsuit by employees of DCFS and had indicated that because of her prior lawsuit, Plaintiff did not deserve to be Affirmative Action Chief;
- statements allegedly made by Obadele to Plaintiff that Staggers was attempting to get the position changed to a double exempt position;
- statements allegedly made by Obadele to Leshonda Rogers that DCFS would give Plaintiff the position, but that Staggers had made it "double exempt" so that DCFS could get rid of Plaintiff within a couple of months;
- statements contained in a November 19, 2003 letter written by Plaintiff's counsel addressed to Director Samuels outlining why the salary offered to Plaintiff for the Affirmative Action Chief position was insufficient;
- statements allegedly made by Obadele to Plaintiff in which Obadele reportedly told Plaintiff that the reason the Affirmative Action Chief position was being changed to a double exempt position was so that DCFS could offer Plaintiff the job and fire her two months later; and
- statements allegedly made by Obadele reportedly telling Rogers that Staggers was not going to allow Plaintiff's promotion to go through.

7

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Such testimony is not admissible except as prescribed by the Rules of Evidence or by other rules. See Fed. R. Evid. 802. The Defendant contends that despite this admonition, the Plaintiff is likely to seek to testify or otherwise present evidence as to statements that are inadmissible hearsay. It alleges, moreover, that each of the foregoing statements was reportedly made outside of court and would be offered solely for the truth of the matters asserted.

An admission by a party opponent is not hearsay. See Fed. R. Evid. 801(d)(2). The Defendant suggests that the Plaintiff may attempt to introduce testimony which she asserts are statements made by DCFS's agents or servants concerning a matter within the scope of the agency or employment, made during the existence of the relationship, pursuant to Rule 801(d)(2)(D). To fall within this exception, the statement must be "within the subject matter of the agency," and "in the context of

8

employment discrimination cases, the declarant must be involved in the decisionmaking process affecting the employment action involved." <u>Keri v. Bd. of Trustees of Purdue University</u>, 458 F.3d 620, 630 (7th Cir. 2006) (internal quotations and citations omitted).

<u>DCFS's arguments</u>

The Defendant contends that there is simply no admissible evidence that Staggers had any authority concerning who would be placed in the Affirmative Action Chief position, a position that was comparable to her own on the organization chart. Additionally, there is no evidence that Staggers acted as Director Samuels's "cat's paw," so as to taint the decision that he made. The Defendant asserts that her role was simply to act as the supervisor of the Division responsible for processing the paperwork. Consequently, DCFS claims that any statements attributed to Staggers are inadmissible hearsay.

The Defendant further claims that Obadele's statements are similarly barred. It alleges that once Staggers was hired as the Deputy Director over Personnel, promotional decisions outside Obadele's division were no longer

within the scope of his agency or employment.  Thus, Defendant contends that Obadele's statements concerning Plaintiff are also hearsay.

DCFS alleges that contrary to Plaintiff's argument, this is not a case where Obadele's statements are being introduced because his personal "power" or "influence" arguably tainted the decision, nor does having "influence" or "power" within an organization make one an agent.  It contends, therefore, that statements attributed to Obadele reportedly repeating Staggers's statements are double hearsay.

The Defendant further contends that some of the statements attributed to Obadele do not just relate Staggers's alleged statements concerning Gardner's promotion, but attributed her alleged motivations, such as a claim that Plaintiff would only be promoted as a set-up to discharge her two months later.  This is inadmissible both as hearsay and as rank speculation.  DCFS notes that the Seventh Circuit has observed:

> Discrimination law would be unmanageable if disgruntled employees–the friends of the plaintiff and often people in the same legal position as the plaintiff–could defeat summary judgment by affidavits speculating about the defendant's motives. . . . The evidence here is speculation about the defendant's motives in dealing not with the witnesses but with

10

the plaintiff.  The affiants are a self-appointed biased tribunal to sit in judgment on [the decision-maker's] motives.

Visser v. Packer Engineering Assoc., Inc., 924 F.2d 655, 659-60 (7th Cir. 1991).  The Defendant asserts that there can be no basis for such a statement here because just as Staggers had no authority to decide who would be placed into the position, she had no authority regarding discharge from the position.  There is no evidence that Defendant was dissatisfied with Gardner's job performance; otherwise, she would not have been selected for the promotion.  Accordingly, DCFS requests that the Plaintiff be prohibited from introducing such testimony at trial.

   Gardner's arguments

In her response brief, the Plaintiff contends that the statements attributed to Obadele are admissible under Rule 801(d)(2)(D) as admissions of a party's agent.  She contends that the Seventh Circuit has determined that this rule is to be broadly interpreted.  "Rule 801(d)(2)(D) takes the broader view that an agent or servant who speaks on any matter within the scope of his agency or employment during the existence of that relationship, is unlikely to make statements damaging to his principal or employer unless

11

those statements are true." <u>Nekolny v. Painter</u>, 653 F.2d 1164, 1172 (7th Cir. 1981); <u>see also</u> <u>Aliotta v. National R.R. Passenger Corp.</u>, 315 F.3d 756, 762 (7th Cir. 2003);[1] <u>Williams v. Pharmacia</u>, 137 F.3d 944, 950 (7th Cir. 1998).

The Plaintiff notes some of the statements that DCFS complains about are statements made by Bamani Obadele to both herself and Leshonda Rogers.  The Plaintiff and Rogers both testified during their depositions regarding what Obadele told them concerning statements allegedly made by Robin Staggers.  Plaintiff states that Obadele informed her as follows:

> He told me that Joni Stahlman had provided information to Robin on my lawsuit.  My previous case against DCFS, and that Robin said that anybody who had–I don't remember the terminology–whatever, to file charges against the department didn't have a right to be chief of affirmative action, to run that office.

Similarly, Rogers also testified that Obadele said that Gardner would not get

---

[1]It is perhaps worth noting that <u>Aliotta</u> was not an employment discrimination case.  The court observed, "While the hiring/firing/promoting/demoting decisionmaking authority of the declarant may be critical in employment cases in which the admission deals with hiring/firing/promoting/demoting-type decisions, no similar requirement exists in other contexts."

the job because she had previously filed a lawsuit against DCFS. The Plaintiff suggests that because of the similarity of this testimony, the information is sufficiently reliable. The Plaintiff notes that the Seventh Circuit has been careful not to make the requirements for admission under Rule 801(d)(2)(D) too difficult. She contends that the evidence shows that Staggers and Obadele were involved in the decision making process and, therefore, the statements are admissible.

As for Robin Staggers, the Plaintiff alleges that her theory of the case is that Staggers actively sought to block her promotion to Chief of Affirmative Action or make the job so undesirable that she would not accept it. Gardner contends that without relying on Obadele's statements, there is a significant amount of evidence that supports the conclusion that Staggers was actively involved in the process for hiring for the position. The fact that she was chief of human resources is significant. Moreover, the Plaintiff emphasizes that former Director Samuels testified that it was Staggers who first mentioned the possibility of reclassifying the Chief of Affirmative Action to a double exempt position.

The Plaintiff further contends that according to Staggers's own affidavit, it was she who encouraged Director Samuels to expand his search after she determined that she was not certain that Gardner was the best candidate for the position.  Samuels also stated that Staggers recommended that other applicants outside the agency be considered in order to ensure that the best candidate was selected.  The Plaintiff contends that this occurred soon after she met with Staggers for the first time and shortly after Obadele told her she would get the position.

Additionally, the Plaintiff claims that Staggers clearly had the ability to slow down the process by not processing the paperwork.  Gardner states that she will rely on a statement made by Obadele that Staggers was impeding the process of Plaintiff getting the promotion.  The Plaintiff notes that Victor Roberson from the Governor's patronage office testified that in order for a position at DCFS to be filled, Staggers had to push through the appropriate paperwork.

As for Obadele, the Plaintiff contends that the issue of whether his statements cannot be admissions because he had no role in personnel

14

decisions is disputed. Because Obadele has invoked his Fifth Amendment rights on previous occasions,[2] Gardner maintains that it is difficult to understand what his exact role was at DCFS. She contends, however, that the evidence suggests that he was a central player when it came to hiring decisions and other important matters at DCFS. The Plaintiff notes that Victor Roberson testified it was Obadele who was responsible for hiring Staggers. Roberson further stated that Obadele had significant influence and could make things happen while employed at DCFS. Roberson also testified that Obadele wielded power with hiring decisions, and he was the liaison between DCFS and the governor's office. Gardner also notes that Roberson spoke to Obadele on a daily basis about filling positions at DCFS. Gardner testified that on March 11, 2003, Obadele told her that he "want[ed] her to take the position as the affirmative action officer on a full-time basis." She claims, therefore, that Obadele clearly had significant influence over the hiring process at DCFS. Leshonda Rogers also testified

---

[2]In August 2005, Bamani Obadele resigned from DCFS. According to media outlets, Obadele's resignation came after he was accused of diverting at least $62,000 in public funds to a private bank account he controlled.

15

that Obadele "was making decisions about who was being hired or not."

The Plaintiff alleges that former Director Samuels testified that when he was looking at who to put into the affirmative action position it is likely that he spoke with Staggers, DCFS Chief Legal Counsel Liz Yore, Chief of Staff Tom Berkshire, and Obadele.  Samuels noted the important role that Obadele played with DCFS and his role with the Governor's office.

Based on the foregoing, the Plaintiff contends that given Obadele's influence within DCFS and the Governor's office, it is obvious that his statements came within the scope of his employment.  Gardner notes, moreover, that Obadele has not denied making these statements; he has instead elected to invoke his rights under the Fifth Amendment.

Other alleged hearsay statements

The Plaintiff notes that the Defendant's motion also seeks the exclusion of "statements contained in a November 19, 2003 letter written by Plaintiff's counsel addressed to Director Samuels outlining why the salary offered to the Plaintiff for the position of chief of Affirmative Action was insufficient."  Gardner claims that it is very difficult to respond to this

statement because DCFS does not argue what statements are hearsay and why they are hearsay.  The Plaintiff states that on November 19, 2003, she did, through her counsel, write a letter to Director Samuels regarding the position in question.  She contends that determining at this stage that any portion of the letter is hearsay is premature.  The Plaintiff maintains that the letter could be offered for reasons other than the truth of the matter asserted.

Gardner speculates that the Defendant's real concern may be that an attachment to the letter outlines the salaries paid to all DCFS PSA's and SPSA's.  She contends that the salary information falls within an exception to the hearsay rule because it was collected by the comptroller's office and could therefore be admitted as a public record under Federal Rule of Evidence 803(8).  The Plaintiff asserts that because DCFS has not articulated why this evidence is hearsay, the Court should withhold any ruling on this particular letter and its attachments until trial.  The Court will defer ruling on this aspect of the motion.

17

Conclusion

Based on the testimony of former Director Samuels, the individual who was responsible for making hiring decisions, and that of Victor Roberson, who testified that Obadele had significant influence over hiring decisions, the Court concludes that some of Obadele's statements are not hearsay and are admissible as an admission by a party opponent under Rule 801(d)(2)(D).  According to the testimony of Samuels and Roberson, there appears to be at least some reliable testimony that Obadele's statements are "within the subject matter of the agency."  Moreover, there is reason to believe that Obadele had some role in the decision making process affecting the employment action, which could make the statements admissible under the rule.  See Keri, 458 F.3d at 630.  Obadele's apparent decision to invoke his rights under the Fifth Amendment is another factor which weighs in favor of giving the Plaintiff some latitude as to the introduction of this testimony.

The Court agrees with the Defendant that some of the statements attributed to Obadele are more problematic.  One such example are

statements which concern Staggers's alleged motivations, such as a claim that Plaintiff would be promoted as a set-up to discharge her a couple of months later.  There does not appear to be any evidence that Staggers had the authority to terminate employees such as the Chief of Affirmative Action.  Barring such evidence or some other evidence of a plan to hire the Plaintiff and then fire her soon thereafter, the Court concludes that any statements by Obadele that Staggers was setting up Plaintiff for termination constitute rank speculation and are inadmissible.

Also at issue are certain statements attributed to Staggers.  The Defendant contends there is simply no admissible evidence that Staggers had any authority whatsoever concerning who would be placed in the Affirmative Action Chief position.  Although the Court is reluctant to conclude that an individual who held a position comparable to the Affirmative Action Chief position had authority regarding who would be placed in the latter position, there does appear to be at least some evidence that Staggers had some involvement in the decision making process. Specifically, former Director Samuels testified that it was Staggers who

suggested making the position double exempt. Moreover, Staggers encouraged Samuels to expand his search beyond the Plaintiff after she met with Gardner and reviewed her performance evaluations. Staggers was "not certain" that the Plaintiff was the best candidate for the position. This is also consistent with the statements of Samuels.

The testimony that the decision maker discussed with Staggers the type of candidate who might fill the position could suggest that her statements are within the subject matter of her agency. Moreover, this evidence may show that Staggers had at least some role in the decision making process. Accordingly, the Court will not automatically exclude these statements which may not be hearsay under Rule 801(d)(2)(D). However, there are still problems with some of the statements which are the subject of the Defendant's motion.

The Defendant seeks to exclude statements allegedly made by Obadele to Plaintiff that Staggers had been told about Plaintiff's previous lawsuit by employees of DCFS and had indicated that because of the previous lawsuit, Plaintiff did not deserve the position. The statements of these "employees"

would seem to constitute hearsay and may not be admissible, unless the Plaintiff can point to an applicable exception or establish that the statements are not hearsay.

It is difficult to rule on the admissibility of some of the statements without knowing the basis of the declarant's knowledge.  In other words, a witness may be permitted to testify about what Obadele said or about what Staggers said, but not about what Obadele said that Staggers said.  Rule 801(d)(2)(D) provides that "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is not hearsay.  But it does not follow that a statement by a party's agent which relates a statement by another agent is not hearsay.

It is difficult to determine the admissibility of the second and third statements that Defendant seeks to exclude because the basis of Obadele's knowledge is not apparent.  It is unclear whether Obadele's statements about the double exempt status of the position are based on his own knowledge or whether they are based on statements made by Staggers or on

21

some combination thereof.  As the Court has already observed, there does not appear to be any evidence that Staggers had the authority to terminate the employment of Chief of Affirmative Action.  Barring such evidence or evidence that others were in on this "plan," the statements by Obadele that the position was made double exempt so that Plaintiff could be fired two months later are not admissible.

Other statements may be based on Obadele's knowledge or his involvement in the decision making process.  The Court is unable to make this determination at this time.  Accordingly, some of these matters will have to be addressed during the course of trial.

Ergo, the Defendant's motion in limine to bar evidence or argument at trial concerning Robin Staggers's transfer and media reports about alleged improper hiring outside DCFS [d/e 31] is ALLOWED.  The Defendant's motion in limine to bar evidence or argument at trial that offering the Plaintiff the Chief of Affirmative Action position as a double exempt position is a cognizable adverse employment action [d/e 32] is DENIED, to the extent that the Plaintiff may present evidence of the double exempt

status of the position as part of her overall theory of the case.   The Defendant's motion in limine to bar the Plaintiff from attempting to introduce hearsay testimony at trial [d/e 33] is ALLOWED IN PART and DENIED IN PART, as provided in this Order.   The Court will defer ruling on certain parts of the motion.   The agreed motion in limine to bar evidence at trial concerning the resolution of Plaintiff's prior EEOC charge or lawsuit [d/e 39] is ALLOWED.   Neither Party will be permitted to introduce evidence or argument at trial concerning the resolution of Plaintiff's prior lawsuit, other than the Parties' stipulation that the matter was resolved.

ENTER: March 21, 2007

FOR THE COURT:

s/Richard Mills
United States District Judge